**Slip Op. 00-43**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, JUDGE**

| | |
|---|---|
| COALITION FOR FAIR ATLANTIC SALMON TRADE,<br><br>      Plaintiff,<br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant,<br>        and<br><br>ASOCIACIÓN DE PRODUCTORES DE SALMÓN Y TRUCHA DE CHILE AG, AND AGUAS CLARAS S.A.,<br><br>      Defendant-Intervenors. | Court No.98-09-02782 |

[Defendant's Final Determination sustained in part and remanded in part.]

Dated:  April 20, 2000

Collier, Shannon, Rill & Scott, PLLC, (Michael J. Coursey, and David C. Smith, Jr.)for plaintiff Coalition for Fair Atlantic Salmon Trade.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Lucius B. Lau, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Office of the Chief Counsel for Import Administration, United States Department of Commerce (Ann Talbot and Stacy J. Ettinger), of counsel, for defendant.

Arnold & Porter, (Michael T. Shor and Kevin T. Traskos) for defendant-intervenors Asociación de Productores de Salmón y Trucha de Chile AG and Aguas Claras S.A.

## OPINION

**GOLDBERG, Judge:** In this action, the Court reviews a challenge to the Department of Commerce's ("Commerce") Notice of Final Determination of Sales at Less Than Fair Value: Fresh Atlantic Salmon From Chile, 63 Fed. Reg. 31,411 (June 9, 1998) ("Final Determination").

Plaintiff Coalition for Fair Atlantic Salmon Trade ("FAST") argues that Commerce impermissibly departed from its established practice when it identified Canada, for purposes of calculating normal value ("NV"), as the third country market for Asociación de Productores de Salmón y Trucha de Chile AG and Aguas Claras S.A. ("Aguas Claras"). FAST also argues that Commerce unlawfully applied a constructed export price ("CEP") offset to Aguas Claras's NV.

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c)(1994). The Court sustains the Final Determination in part and remands in part.

## I.
## BACKGROUND

On July 2, 1997, at the request of FAST, Commerce initiated an antidumping duty investigation to determine whether imports of fresh Atlantic salmon from Chile ("salmon") were being or were

likely to be sold in the United States at less-than-fair-value. See Initiation of Antidumping Duty Investigation: Fresh Atlantic Salmon From Chile, 62 Fed. Reg. 37,027 (July 10, 1997).  After determining that it would be impracticable to examine all Chilean producers and exporters of salmon, Commerce decided to limit its investigation to the five largest Chilean exporters.  See Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Fresh Atlantic Salmon From Chile, 63 Fed. Reg. 2,664, 2,664-66 (Jan. 16, 1998)("Preliminary Determination").  Commerce published its Final Determination on June 9, 1998.  See 63 Fed. Reg. 31,411.

## II.
## STANDARD OF REVIEW

The Court will sustain Commerce's Final Determination if it is supported by substantial evidence on the record and is otherwise in accordance with law.  See 19 U.S.C. § 1516a(b)(1)(B) (1994).

To determine whether Commerce's interpretation of a statute is in accordance with law, the Court applies the two-prong test set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  Chevron first directs the Court to determine "whether Congress has directly spoken to the

precise question at issue." See id. at 842. To do so, the Court must look to the statute's text to ascertain "Congress's purpose and intent." Timex V.I., Inc. v. United States, ___ Fed. Cir. (T) __, __, 157 F.3d 879, 881 (1998) (citing Chevron, 467 U.S. at 842-43 & n.9). If the plain language of the statute is not dispositive, the Court must then consider the statute's structure, canons of statutory interpretation, and legislative history. See id. at 882 (citing Dunn v. Commodity Futures Trading Comm'n, 519 U.S. 465, 470-80 (1997)); Chevron 467 U.S. at 859-63; Oshkosh Truck Corp. v. United States, 123 F.3d 1477, 1481 (Fed. Cir. 1997)). If, after this analysis, Congress's intent is unambiguous, the Court must give it effect. See id.

If the statute is either silent or ambiguous on the question at issue, however, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843 (footnote omitted). Thus, the second prong of the Chevron test directs the Court to consider the reasonableness of Commerce's interpretation. See id.

III.
**DISCUSSION**

The Court first considers FAST's argument that Commerce's determination was not in accordance with law because Commerce failed to follow agency precedent.  The Court rejects this argument.  The Court then considers FAST's claim that Commerce unlawfully applied a CEP offset and finds that Commerce's application of the CEP offset was not in accordance with law.

A.    **Flowers Did Not Establish a Prior Norm Commerce Was Required to Follow.**

Under U.S. antidumping law, Commerce determines dumping margins by comparing "the weighted average of the normal values to the weighted average of the export prices (and constructed export prices) for comparable merchandise."  See 19 U.S.C. §§ 1673(1), 1677f-1(d)(A)(i)(1994).  Normal value is either the price at which the subject merchandise is sold in the exporting country, or under certain market circumstances, the price at which the merchandise is sold in a representative third-country market.  See 19 U.S.C. § 1677b(a)(1)(B) (1994).  In the Final Determination, Commerce concluded that Aguas Claras's NV should be based on its sales of salmon to Canada.  See 63 Fed. Reg. 31,419-20.

The statutory requirements for Commerce's selection of a

third-country NV are that:

(I) Such price is representative,

(II) The aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by the exporter or producer in such other country is 5 percent or more of the aggregate quantity (or value) of the subject merchandise sold in the United States or for export to the United States, and

(III) The administrating authority does not determine that the particular market situation in such other country prevents a proper comparison with the export price or constructed export price.

19 U.S.C. § 1677b(a)(1)(B)(ii). Commerce found in the Final Determination that the Canadian market fulfilled these requirements. See 63 Fed. Reg. at 31,420.

FAST argues that Commerce improperly selected Canada as Aguas Claras's third-country NV market. See Initial Brief of Plantiff Coalition for Fair Atlantic Salmon Trade in Support of Rule 56.2 Motion for Judgment on the Agency Record ("FAST's Br."), at 13-23; Reply Brief of Plaintiff, The Coalition for Fair Atlantic Salmon Trade, in Support of its Rule 56.2 Motion for Judgment on the Agency Record ("FAST's Reply Br."), at 1-13. FAST reasons that Commerce was prohibited from selecting Canada as a third-country market because of a "norm" established by Certain Fresh Cut Flowers from Colombia: Preliminary Results and Partial Termination of Antidumping Duty Administrative Review, 63 Fed. Reg. 5,354, 5,357 (Feb. 2, 1998)("Flowers").

Specifically, FAST claims <u>Flowers</u> established a norm that prohibits the selection of a national market for third-country NV purposes where that market is "unimportant." <u>See</u> FAST's Br., at 15-16 (citing <u>Flowers</u>, 63 Fed. Reg. at 5,357). FAST argues that a market is not "important," or alternatively not "representative,"[1] under <u>Flowers</u> if the market imports less than three percent of the subject merchandise exported from the home market. <u>See</u> <u>id.</u> at 16-17; FAST's Reply Br., at 3-4. Because in this case Chilean exports of salmon to Canada were under one percent of the total Chilean exports of salmon, FAST argues that the <u>Flowers</u> norm prohibits the selection of Canada as a third-country NV market. <u>See</u> FAST's Br., at 17-18.

FAST's argument lacks merit because <u>Flowers</u> did not create a prior norm that Commerce is compelled to follow. <u>See</u> 63 Fed. Reg. 5,357. The law is clear. Agencies must conform to prior norms or explain their reasoning for departing from those norms so that a reviewing court may understand the basis of the agency

---

[1] In its initial brief, FAST argues that the norm purportedly established by <u>Flowers</u> must be used to determine if a market is "important." <u>See</u> FAST's Br., at 15-18. In its reply brief, however, FAST argues that the norm requires the market to be "representative." <u>See</u> FAST's Reply Br., at 1-8. "Representative" is an existing statutory requirement. <u>See</u> 19 U.S.C. § 1677b(a)(1)(B)(ii)(I). However FAST attempts to argue the application of <u>Flowers</u> -- either as elucidating the statutory term "representative" or as adding an extra-statutory requirement -- FAST's argument is that Commerce must follow the norm established by <u>Flowers</u>.

action.  See, e.g., Atchison, Topeka & Santa Fe Ry. Co. v.
Wichita Bd. of Trade, 412 U.S. 800, 808 (1973).  Here, however,
there was no prior norm to follow.  The Court can find no
explicit explanation, and FAST fails to offer any, of what is
required to establish a prior norm.  It is clear to the Court,
however, from the plain meaning of the term and from the implicit
reasoning in the decisions of this court, that Flowers alone
cannot establish an agency norm.  See Atchison, 412 U.S. at 808
("settled rule" used in relation to prior norm); Hussey Copper,
Ltd. v. United States,834 F.Supp. 413, 419 (1999)("traditional
methodology" and "normal practice" used in relation to prior
norm).  The word "norm" connotes consistency over time.  See id.
FAST explicitly concedes that Flowers is the first, and only,
instance in which Commerce purportedly decided that a market was
unimportant or non-representative based on an analysis of the
total home market exports compared to third-country market
exports.  See FAST's Reply Br., at 3.  Therefore, Flowers did not
establish a prior norm Commerce was required to follow.[2]

_____

[2] Moreover, even if Flowers established a "norm," it is
questionable whether it could be considered a "prior norm"
because the Final Results in Flowers was published one day after
the Final Determination in this case.  See 63 Fed. Reg. 31,417.
FAST argues that Commerce's Amended Final Determination was
published on July 30, 1998, and therefore post-dates Flowers.
Especially given the fact that no norm exists, the Court is not
persuaded by that technicality.

B.    **Commerce Improperly Applied the CEP Offset.**

FAST argues that Commerce improperly applied the antidumping statute to determine whether Aguas Claras should receive a CEP offset for Level of Trade ("LOT") differences between the salmon Aguas Claras sold in the United States and the salmon it sold in Canada.  See FAST's Br., at 23-28.  Specifically, FAST argues that Commerce improperly deducted section 772(d) selling expenses prior to comparing LOT for purposes of giving a CEP offset.  See id. at 27.

The Court has previously decided this issue.  See Micron Tech., Inc. v. United States,  40 F. Supp. 2d 481, 485-86 (1999). In Micron, the Court expressly held that Commerce may not deduct CEP selling expenses prior to conducting a LOT analysis because to do so would make the CEP offset automatic.  See id. at 486 (citing Borden, Inc. v. United States, F. Supp. 2d 1221, 1235-42 (1998) (Restani, J.).  The Court therefore remands this issue to Commerce for the application of LOT methodology in conformity with Micron, Borden and the governing statute.  See Mircon, 40 F. Supp. 2d at 485-86; Borden, 4 F. Supp. 2d at 1240-42.

### IV.
### CONCLUSION

For all of the foregoing reasons, the Court sustains the part of the Final Determination pertaining to Commerce's selection of Aguas Claras's third-country NV and remands to Commerce the part of the Final Determination pertaining to Aguas Claras's CEP offset.  A separate order will be entered accordingly.

_____
                                           Richard W. Goldberg
                                                    JUDGE

Date:  April 20, 2000
       New York, New York