## FARMERS' AND MERCHANTS' BANK, a corporation, Appellant,

v.

## UNITED STATES of America, Appellee.
### No. 72–1883.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1973.

Decided April 6, 1973.

Thomas N. Chambers, Charleston, W. Va. (Benjamin G. Reeder, Morgantown, W. Va., Louis S. Southworth, II, Charleston, W. Va., Reeder & Shuman, Morgantown, W. Va., and Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for appellant.

Charles R. Burnett, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Bennet N. Hollander, Attys., Tax Div., U. S. Dept. of Justice, Paul C. Camilletti, U. S. Atty., and James F. Companion, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WIDENER, Circuit Judge.

ALBERT V. BRYAN, Senior Circuit Judge:

A refund of 1964 Federal income taxes was sued for by the Farmers' and Merchants' Bank of Morgantown, West Virginia in April 1972, but the District Court sustained the Government in denying the tax benefit on which the bank's claim rested. The bank appeals.

Its claim, amounting to $36,410.20 plus interest, arose in the computation of the bad debt deduction allowed for income tax purposes. 26 U.S.C. § 166 (Internal Revenue Code of 1954.) Since 1948, with the permission of the Secretary of the Treasury, the bank had utilized the uniform ratio method of calculating its reserve for bad debts, pursuant to 26 U.S.C. § 166(c). The formula [1] for establishing the annual addition to this reserve, it was stipulated, "involved the application of an average loss experience factor for the determination of the ratio of losses to outstanding loans for the taxable year". For 1964 this factor when based upon the ratio of outstanding loans thought by the bank to be eligible produced for appellant bank $61,066.91, and this sum was therefore deducted from its taxable income.

The bank here contends that under a mistaken belief of their ineligibility, loans known as "Federal funds sold", explained in stipulation 8, infra, amounting to $1,200,000 were omitted from the aggregate outstanding loans in computing its 1964 bad debt reserve; that if this amount had been included, the reserve would have been $133,909.31 instead of $61,066.91, a difference of $72,842.40; and the bank would have then been assessable with $36,410.20 less in taxes—the amount now in suit.

The point of this appeal is that the Government in 1964 let some other banks include Federal funds sold as outstanding loans in calculating their bad debt reserve, but without reason denied this privilege to the appellant. It does so by a 1968 Internal Revenue ruling, infra, that allows the benefit of such an inclusion *only to a bank which claimed it in its return* for a taxable year prior to November 1968. Thus, it refused appellant this privilege because it was not asserted in its 1964 return but, rather, by way of a timely claim for refund filed in 1966.

The facts of the case were agreed by the parties and, essentially, the bank's claim evolved from the following provisions of the stipulation:

"8. In March, 1964, officials of Mellon National Bank and Trust Company outlined a procedure to officials of plaintiff known in banking circles as 'Federal funds sold.' 'Federal funds sold' is a term used to describe a loan from one bank to another which is collaterally secured by United States Government securities owned by the borrower. The loans are normally of short duration, from one to three days in most cases. The purpose of the transaction, in the case of the borrower, usually is to meet re-

---

1. See Mimeograph 6209, C.B. 1947–2, 26; modified Rev.Rul. 54–148.

serve requirements and, in the case of the lender, is to loan excess reserve funds. . . .

"10. The first transaction in 'Federal funds sold' by plaintiff occurred in April, 1964. The amount of Federal funds loaned to Mellon during 1964 ranged from a low of $0 to a high of $2,000,000 on October 6, 1964. . . . On December 31, 1964, the bank had outstanding a 'Federal funds sold' loan to Mellon in the amount of $1,200,000.

"11. . . . It was the plaintiff's intention to add to its bad debt reserve for 1964, and to deduct in arriving at its taxable income for such year the maximum amount allowable under the method or formula prescribed by [the Government formula to establish the reserve].

"16. If this Court should determine that the plaintiff is entitled to include the aforesaid 'Federal funds sold' loan of $1,200,000 to Mellon among its eligible loans outstanding for purposes of the formula computation, the plaintiff's maximum addition to its reserve for bad debts for 1964, is $133,909.31, or a sum of $72,842.40 larger than the maximum addition as computed in its 1964 income tax return.

"19. On or about April 9, 1966, the plaintiff filed with the District Director of Internal Revenue for the District of West Virginia, Parkersburg, West Virginia, a claim for refund of 1964 income taxes. . . .

"20. By letter dated January 27, 1969, the District Director of Internal Revenue, Parkersburg, West Virginia, transmitted to plaintiff a copy of an examination report respecting plaintiff's 1964 and 1965 Federal income tax returns. . . . Said examination report denies plaintiff's claim for refund of 1964 Federal income taxes in the amount of $36,421.20. The reason given for disallowance of the claim was stated . . . to be that 'Recently the National Office [of the

Internal Revenue Service] ruled that the *claim for refund is not allowable based on Revenue Ruling 68–630.'* . . ." (Accent added.)

The inequity of the Government's position appears on a reading of Revenue Ruling 68–630. It is said to "clarify" the bad debt reserve computation. The ruling, in effect, declares that the course pursued by the appellant in not including 'Federal funds sold' was always the correct course. Nevertheless, the clarification indulges the "incorrect" banks to retain their gains while declining on a procedural point to accord the appellant enjoyment of the same indulgence. The unfairness is compounded by the stipulated fact that 68–630 was promulgated more than two and one-half years after the refund claim was filed—the rules of the game were changed at the end of the contest.

Revenue Ruling 68–630 in its apt parts provides as follows:

"SECTION 1. PURPOSE.

The purpose of this Revenue Ruling is to clarify certain questions regarding the eligibility of items for inclusion in the loan base by banks using the uniform reserve ratio method of computing annual additions to reserves for bad debts.

"SECTION 8. MONEY MARKET INVESTMENTS.

. . . . . .

Accordingly, it is held that banks using the uniform reserve ratio method . . . must exclude from the loan base upon which annual additions to a reserve are calculated the following money market obligations:

(1) 'Sales' or 'loans' of Federal funds irrespective of the purchaser or borrower. . . .

"SECTION 10. EXTENT OF APPLICATION WITHOUT RETROACTIVE EFFECT.

The position stated in this Revenue Ruling clarifies certain questions that have arisen concerning computation of

the loan base but does not represent a change in a previously published position of the Internal Revenue Service. It would, therefore, normally be applied to all open taxable years. However, in view of the nature of the deduction for additions to a reserve for bad debts, over-all tax deductions to taxpayers here involved would not be significantly affected by the timing of the application of this Revenue Ruling. Therefore, under the authority of section 7805(b) of the Code, the position stated herein *will not be applied by the Service to deductions claimed for taxable years ending on or before November 30, 1968,* to the extent that such deductions were based on inclusion of the following items in the loan base (accent added):

. . . . . .

(4) 'Sales' or 'loans' of Federal funds. . . .

. . . . . .

"The amount of the deduction for an addition to the reserve for bad debts for a taxable year must be based upon the amount contemporaneously entered on the taxpayer's books during the taxable year, or as soon as practicable after the close of the taxable year, and cannot be subsequently increased."

The Government attempts to salve its discrimination by embracing the discretion vested in the Secretary of Treasury by 26 U.S.C. § 7805 as follows:

". . . .

(b) Retroactivity of regulations or rulings.—The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."

■ But here the Secretary abused his discretion, for "The Commissioner cannot tax one and not tax another without some rational basis for the difference". Justice Frankfurter concurring in United States v. Kaiser, 363 U.S. 299, 308, 80 S.Ct. 1204, 1210, 4 L.Ed.2d 1233

(1960). No rational basis is found here for differentiating between the appellant and the other banks. Fortunately, such use of discretion is reviewable, Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 184, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957), and we decry it.

■ The Government would excuse the arbitrary retroactivity of revenue Ruling 68–630 by saying that it was not a departure from prior rulings, since the Government had never given permission to any bank to use Federal funds sold in calculating a bad debt reserve. But this assertion dissolves on scrutiny. The Government had approved the very method of computing the bad debt reserve followed by the appellant and over the years had deliberately withheld disapproval of Federal funds sold as eligible loan-predicates for fixing bad debt reserves. It was quite aware of this practice and unequivocally tolerated it with full knowledge of its prevalence. That this acquiescence was accepted by the banks, as well as acknowledged by the Government, is evidenced by the need for clarification emphasized in the ruling and by the anointment of the practice for years prior to November 1968. Such a reversal of position, as applied to this taxpayer, is too inequitable to be permissible. Cf. Exchange Parts Company of Fort Worth v. United States, 279 F.2d 251, 254, 150 Ct.Cl. 538 (1960).

■ Added argument against the appellant relies upon the last paragraph in Section 10 of Ruling 68–630, supra, providing that the reserve cannot be "subsequently increased" after the close of the taxable year. True, the appellant does endeavor to increase its 1964 reserve, but not by the injection of a later accrued sum. The addition is simply a correction of previous figures. Surely this is not the kind of increase forbidden in the ruling, for either the Government or the taxpayer may rectify an earlier erroneous return. This again demonstrates that the appellant's claim was rejected because it was made in the

form of a refund request instead of in an original deduction.

Finally, the Government suggests that the instant claim should fail because the benefit accruing to the "incorrect" banks will be "washed out in⁸ later years" and that all banks will then be on the same footing. But this is no ground for withholding from this taxpayer the asserted deduction, for the Government's suggestion is no more than a prediction —one that did not prove true between 1964 and 1968. Moreover, the argument totally ignores appellant's right to equal treatment for the specific tax year involved.

Our mandate will vacate the judgment at trial and direct the District Court to order the refund for which the Farmers' and Merchants' Bank of Morgantown sued.

Vacated with directions.