**OSHKOSH TRUCK CORPORATION, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 96–5092.

United States Court of Appeals, Federal Circuit.

Sept. 12, 1997.

Kurt S. Meckstroth, Foley & Lardner, Milwaukee, WI, argued, for plaintiff–appellant. With him on brief were Timothy C. Frautschi and Kevin Martens.

Gilbert S. Rothenberg, Attorney, Tax Division, Department of Justice, Washington, DC, argued, for defendant–appellee. With him on brief were Loretta C. Argrett, Assistant Attorney General, and William J. Patton, Attorney, Appellate Staff.

Donald C. Alexander, Akin, Gump, Strauss, Hauer & Feld, L.L.P, Washington, DC, for amicus curiae. Of counsel on brief were Duane H. Pellervo and Michael Quigley.

Before MAYER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge:

The question in this case is whether the Internal Revenue Service (the Service) properly applied a regulation governing the federal excise tax on retail sales of certain automotive vehicles to trucks the appellant Oshkosh Truck Corporation (Oshkosh) sold directly to the United States. The Court of Federal Claims upheld the application of the regulation to those sales. We reverse and remand.

## I.

A. Section 4051(a) of the Internal Revenue Code (the Code), 26 U.S.C.§ 4051(a), imposes on the "first retail sale" of heavy duty trucks and trailers a federal excise tax of twelve percent of the amount for which the article is sold. The "first retail sale" is defined as "the first sale, for a purpose other than for resale or leasing in a long-term lease, after production, manufacture, or importation." 26 U.S.C. § 4052(a)(1) (1994).

In 1987, Congress amended section 4052 by adding sections 4052(b)(3) and 4052(b)(4). Section 4052(b)(4)(A) provides that in determining the price on which the tax is computed, there should be added to the sales price an amount reflecting "the presumed markup percentage determined under paragraph (3)(B)." 26 U.S.C.§ 4052(b)(4)(A) (1994). In turn, section 4052(b)(3)(B) defines the "presumed mark-up percentage" as "the average markup percentage of retailers of articles of the type involved, as determined by the Secretary."

In Temporary Treasury Regulation § 145.4052–1, the Secretary determined that "a single presumed markup percentage of four percent has been established for most articles subject to section 4051." T.D. 8200, 1988–1 C.B. 351, 352. In subsection (d)(7)(ii) of the Regulation, captioned "Exceptions," the Secretary provided that the " 'presumed markup percentage' for trailers, semitrailers, and remanufactured automobile truck chassis and bodies and tractors shall be zero percent," id. at 355, since a "markup ... on these articles is not necessary to carry out the purpose of the section 4051 retail tax because retail sales of trailers and semitrailers are generally made by trailer manufacturers. Similarly, remanufactured trucks and tractors generally are not sold through an established retail distribution network." Id. at 352.

B.1. The facts in this case are largely undisputed. The Army requested proposals for specialized, high-cargo-capacity trucks, which it called Heavy Expanded Mobility Tactical Trucks (HEMT trucks). Oshkosh developed vehicles that met the government's requirements and, in competition with two other companies, was awarded contracts to manufacture five different body types of HEMT trucks. All of these contracts resulted from arms-length negotiations between Oshkosh and the United States.

Between October 1987 and December 1990, the tax period at issue, Oshkosh sold approximately 3600 HEMT trucks directly to the Army, not through retail dealers or agents, at prices ranging from approximately $105,000 to $213,000, and one such truck to Taiwan for $232,500.

2. For the taxable years April 1, 1987, through December 31, 1990, Oshkosh paid the twelve percent excise tax on the sale price of the HEMT trucks but not on the presumed markup. Upon audit, the Service determined that Oshkosh also should have paid on the presumed markup and assessed additional taxes and interest of $3,068,806.67. Oshkosh paid this amount and, after the Service disallowed a claim for refund, commenced the present action in the Court of Federal Claims. It contended that "[t]o the extent that the regulations promulgated by the Secretary ... require that a presumed markup greater than zero percent be applied to the sales by [Oshkosh] to the Department of the Army, the regulations are invalid" because

> the statute and its legislative history provide that the presumed markup shall not apply to situations where the markup is not necessary to carry out the purpose of the statute, which is to impose the tax on a retail price as opposed to a wholesale or otherwise discounted price. The statute does not apply to [Oshkosh's] sales to the Department of the Army because the sales price of the vehicles was the retail price, not a wholesale or discounted price.

Oshkosh moved for summary judgment. The Court of Federal Claims, *sua sponte*, granted judgment for the United States. The court "agree[d] that Congress likely did not intend to cover such sales" but stated that "Congress gave the Secretary wide discretion to implement the law. The Secretary either overlooked plaintiff's circumstance or it was not brought to the Secretary's attention during rule-making. Plaintiff must seek relief from the Agency or from Congress." Stating that "Congress did not intend the presumptive mark-up to apply where the mark-up is unnecessary to carry out its purpose of imposing the excise tax on retail rather than wholesale or otherwise discounted prices," the court concluded:

Plaintiff's trucks may be similar to the exempted classes—*i.e.* trucks sold at retail prices and not available through an established retail distribution network. While we do not believe that a presumptive mark-up of HEMT [trucks] is necessary to achieve the purpose of the statute, Congress did not direct the Secretary to exclude *all* such vehicles. Instead, Congress delegated express authority to determine when the purposes of the statute are not served. The Agency perhaps should have exempted HEMT [trucks] from the regulation but it was not required to do so.

## II

■ In providing for the presumed mark-up percentage in the 1987 amendments to section 4052, a major purpose of Congress was to close the loophole through which certain vehicle sales escaped the excise tax on the portion of the sales price attributable to the retail markup, which resulted when the manufacturer by-passed selling through a retail dealer and instead sold directly to the customer. H.R. Conf. Rep. No. 100-27, at 260-61 (1987). In that situation, the direct sale by the manufacturer was actually a retail sale, but that sale was given more favorable tax treatment than if the sale had been made through the usual retailer distribution. Congress therefore intended the presumptive mark-up rule to cover "all sales on which manufacturers or importers collect the ... retail excise tax." *Id.* at 260.

As provided in the House bill, the presumptive retail sales price rule is not to apply in situations identified in Treasury Department regulations where such a presumptive price is unnecessary to carry out the purpose of imposing tax based upon a retail, as opposed to wholesale or otherwise discounted, price. The conferees understand that certain sales of taxable vehicles are accomplished through the use of finance leases which reflect true retail sales prices. For example, a retail dealer may sell a taxable vehicle to a financing company who then leases the vehicle to the dealer, with the dealer entering into another lease with the ultimate user of the vehicle. The conferees do not intend that

the Treasury Department apply the new presumptive retail sales price rule to such transactions if the lessor/seller establishes that the price to the ultimate user of the vehicle represents an arm's-length retail sales price. *Id.* at 261.

As the Secretary summarized the congressional intent in adding the presumed markup percentage, the purpose was to "ensure that the tax base of most transactions considered to be taxable sales subject to section 4051 includes either an actual or a presumptive retail markup." T.D. 8200, 1988–1 C.B. 351, 352.

Consistent with that intent, the Secretary exempted "truck trailers, semitrailers and remanufactured trucks and tractors" from the four percent presumed markup as "not necessary to carry out the purpose of the section 4051 retail tax because retail sales of trailers and semitrailers are generally made by trailer manufacturers. Similarly, remanufactured trucks and tractors generally are not sold through an established retail distribution network." *Id.*

The reason that led the Secretary to exempt these four types of vehicles from the presumed markup—the markup was "not necessary to carry out the purpose of the section 4051 retail tax" because "retail sales of trailers and semitrailers are generally made by trailer manufacturers"—is equally applicable to Oshkosh's sales of the HEMT trucks to the United States. The trucks were specially designed to meet the Army's particular requirements. Oshkosh itself directly dealt with the government in negotiating the contracts and sold the vehicles to the government without the participation of any retail distributors. The Army used the vehicles itself and did not resell them (or purchase them for resale). Of the approximately 3600 HEMT trucks that Oshkosh manufactured and sold during the taxable period involved, all but one were sold to the United States, and that single exception was sold to Taiwan.

The government argues that Oshkosh's sales of the HEMT trucks to it were wholesale rather than retail sales and that such sales were different from the retail sales of trailers and semitrailers that the Secretary exempted from the presumed markup. This argument is at odds with the statutory definition of "first retail sale," which defines such sale as "the first sale for a purpose other than for resale or leasing in a long-term lease, after production, manufacture, or importation." 26 U.S.C. § 4052(a)(i) (1994); *see also Black's Law Dictionary* 1315 (6th ed.1990) (defining "retail" as "[a] sale for final consumption in contrast to a sale for further sale or processing (*i.e.* wholesale). A sale to the ultimate consumer.").

When a manufacturer sells directly to the end-user, *i.e.* at a retail sale, the price at which it sells is the "retail price" as that is the price at which these items are being sold in the marketplace. Although the Taiwanese Army paid more than the United States for the one HEMT truck it purchased, that single sale did not change the retail nature of the sales to the United States.

The government's argument proves too much. For if Oshkosh's sales to the United States were wholesale ones, then they were not subject to the twelve percent excise tax at all, since that tax applies only to the "first retail sale" of the covered vehicles.

Indeed, the Court of Federal Claims recognized the force of these arguments. The court stated that it "agree[d] that Congress likely did not intend to cover such sales," that "Congress did not intend the presumptive mark-up to apply where the mark-up is unnecessary to carry out its purpose of imposing the excise tax on retail rather than wholesale or otherwise discounted prices," and that it did not believe that "a presumptive mark-up of HEMT [trucks] is necessary to achieve the purpose of the statute." The court nevertheless upheld the imposition of the presumed markup to those sales as a proper exercise of the Secretary's "wide discretion to implement the law."

In this court, the government similarly invokes the broad discretion of the Secretary to determine the extent to which certain categories of vehicles should or should not be exempted from the presumed markup. The Secretary offers no justification, however, for the disparate treatment he has provided for Oshkosh's sales of the HEMT trucks to the United States (which are subjected to the presumed markup) and the similarly situated

direct retail sales of trailers and semitrailers (which were exempted from the markup). As noted, Congress stated that "the presumptive retail sales price rule is not to apply in situations … where such a presumptive price is unnecessary to carry out the purpose of imposing tax based upon a retail, as opposed to wholesale or otherwise discounted, price." H.R. Conf. Rep. No. 100–27, at 261 (1987).

■ "[W]hen an agency's interpretation of a statute it is entrusted to administer is contrary to the intent of Congress, as divined from the statute and its legislative history, we owe it no deference." *Muwwakkil v. Office of Personnel Management*, 18 F.3d 921, 925 (Fed.Cir.1994); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 845, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). ("[W]e should not disturb [an interpretation] unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned," (quoting *United States v. Shimer*, 367 U.S. 374, 382–83, 81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908 (1961))).

■ The Service's position here is inconsistent with the frequently expressed view that, unless there is a rational reason for different treatment, similarly-situated taxpayers should be treated similarly. *See United States v. Kaiser*, 363 U.S. 299, 308, 80 S.Ct. 1204, 1210, 4 L.Ed.2d 1233 (1960) (Frankfurter, J., concurring) ("The Commissioner cannot tax one and not tax another without some rational basis for the difference."); *Keasler v. United States*, 766 F.2d 1227, 1234 n. 16 (8th Cir.1985) ("[A] decision that will produce uniformity is preferred so that similarly situated taxpayers are given equal treatment."); *cf. Baker v. United States*, 748 F.2d 1465, 1467 (11th Cir.1984) (in deciding whether a ruling should be applied retroactively "the interest in equality of treatment among similarly situated taxpayers" should be considered); *Farmers' & Merchants' Bank v. United States*, 476 F.2d 406, 409 (4th Cir.1973) (the Secretary abused his discretion by taxing one bank while not taxing others, without a rational basis for the different treatment).

In sum, the Secretary abused his discretion when he applied the four percent markup to Oshkosh's sales of its HEMT trucks to the United States. Those sales are indistinguishable from the truck sales that the Secretary exempted from the markup because generally they were made by the manufacturers directly to customers and not through dealers, and hence did not involve the problem that Congress intended to reach by the markup provision. That is the situation in the present case. The Secretary cannot justify his treatment of Oshkosh's truck sales as a proper exercise of his discretion to apply his regulation.

### III.

■ The week following oral argument in this case, the United States sent a "letter of clarification" to the court, which it stated was intended "to clear up a possible misconception of the Government's position in this case." The letter shifted the emphasis of the government's argument regarding the Secretary's discretion.

Nothing in the rules of this court or the Federal Rules of Appellate Procedure provides for the filing of such a post-argument document. The court did not request it, and the government did not even request our permission to file it. The proper place to make legal arguments is in the briefs, not in such a belated and unauthorized filing. We therefore decline to consider the new arguments in the government's letter.

### CONCLUSION

The judgment of the Court of Federal Claims in favor of the United States is reversed, and the case is remanded to that court for further proceedings in accordance with this opinion.