## COMPUTER SCIENCES CORPORATION

v.

### The UNITED STATES

No. 92–334T.

United States Court of Federal Claims.

Sept. 18, 2001.

McGee Grisby, Washington, D.C., for the plaintiff. Julian Y. Kim, of counsel.

Stuart J. Bassin, Washington, D.C., with whom was Acting Assistant Attorney General Claire Fallon, for the defendant. William K. Drew, of counsel.

## OPINION

YOCK, Senior Judge.

Plaintiff Computer Sciences Corporation (the "plaintiff" or "CSC") filed a Complaint against the United States (the "defendant"), alleging that CSC had overpaid its tax liability for the tax year ending on March 30, 1990, and was entitled to recover the amount of such overpayment, plus interest from the date of payment. This matter is now before the Court on the parties' cross-motions for summary judgment. For the reasons set forth herein, the plaintiff's Partial Motion for Summary Judgment is GRANTED, and the defendant's Motion for Summary Judgment is DENIED.

### Background

CSC is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in El Segundo, California. First Set of Stipulations (Aug. 18, 1990) (as amended by Order of Sept. 27, 2000) ("Stips.") ¶ 1. The plaintiff's taxpayer identification number is 95–2043126. *Id.* During all periods relevant to this action, CSC used the accrual method of accounting for federal income tax purposes and had adopted a 52– to 53–week taxable year. *Id.* ¶ 2. For the 1989 through 1990 fiscal year, the plaintiff's taxable year ended on March 30, 1990 ("TY 1990") and its federal income tax return was originally due (before extensions) on June 15, 1990. *Id.* ¶ 3. On June 11, 1990, CSC filed a Form 7004 (Application for Automatic Extension of Time to File Corporate Income Tax Return) with the Internal Revenue Service (the "Service") and accordingly was granted an automatic extension of time until December 17, 1990, in which to file its federal income tax return for TY 1990. *Id.* ¶ 4. *See also id.* Ex. A.

During all periods relevant to this action, the plaintiff maintained a group of qualified employee benefit plans for the benefit of its employees. CSC made contributions to its qualified employee benefit plans with respect to compensation earned by plan participants during the period from March 30, 1990, through December 17, 1990 ("Contributions in Dispute"). Stips. ¶ 5. These contributions consisted of both elective deferral contributions pursuant to section 401(k) of the Internal Revenue Code (the "Code") and matching contributions made pursuant to section 401(m) of the Code. *Id.* ¶ 6. *See* 26 U.S.C. §§ 401(k), (m) (1994).

In general, contributions to qualified pension plans are deductible "[i]n the taxable year when paid * * *." 26 U.S.C. § 404(a)(1)(A). A statutory exception to this rule provides that:

> a taxpayer shall be deemed to have made a payment on the last day of the preceding taxable year if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof).

*Id.* § 404(a)(6).

In 1976, the Service issued Revenue Ruling 76–28, 1976–1 C.B. 106, *modified,* Rev. Rul. 76–77, 1976–1 C.B. 107, which purported to "provide[ ] rules with respect to the application of section 404(a)(6) of the Code, as amended by the Employee Retirement Income Security Act of 1974 ('ERISA') (Pub. Law No. 93–406, 88 Stat. 829), 1974–3 C.B. 148, in those areas where the Service has determined that guidelines are necessary pending the issuance of regulations." *Id.* at 106. More specifically, Revenue Ruling 76–28 provided that:

> An employer's payment to a qualified retirement plan after the close of the employer's taxable year to which section 404(a)(6) of the Code, as amended, applies *shall be considered to be on account of* the preceding taxable year (providing the plan was in existence in such year) if the plan treats the payment as it would treat a payment actually received on the last day of the employer's preceding taxable year, and the employer designates the payment in writing to the plan administrator or trustee as a payment on account of its preceding taxable year or deducts the payment on its tax return on or before the due date of its return for such year, including extensions thereof.

*Id.* (emphasis added). Accordingly, subsequent to the issuance of Revenue Ruling 76–28 and for several years prior to TY 1990,

the plaintiff had deducted contributions to its qualified employee benefit plans that were made during the period between the close of a given taxable year and the due date for filing the tax return for that year in the prior tax year. Pl. Proposed Findings of Uncontroverted Facts ¶ 13, App. 1. The Service disagrees that Revenue Ruling 76–28 would have allowed the plaintiff to take these deductions in its prior tax year, but nevertheless allowed deductions made in this manner prior to the Contributions in Dispute to stand on audit.[1] See Def. Mot. for Summ. J. at 8–9, 16–18.

In any event, on December 7, 1990, ten days prior to the extended due date of the plaintiff's TY 1990 return, the Service released Revenue Ruling 90–105, 1990–2 C.B. 69. See also Stips. ¶ 8. Revenue Ruling 90–105 further interpreted section 404(a)(6), providing in pertinent part that:

> [c]ontributions to a qualified cash or deferred arrangement within the meaning of section 401(k) or to a defined contribution plan as matching contributions within the meaning of section 401(m) are not deductible by the employer for a taxable year, if the contributions are attributable to compensation earned by plan participants after the end of that taxable year. This holding applies regardless of whether section 404(a)(6) deems the contributions to have been paid on the last day of that taxable year, and regardless of whether the employer uses the cash or an accrual method of accounting.

1990–2 C.B. at 71. Thus, under the explicit terms of Revenue Ruling 90–105, the Service would not allow the Contributions in Dispute to be deducted on the plaintiff's TY 1990 federal income tax return.

The "Application" section of Revenue Ruling 90–105 provided instructions for taxpay-
ers (such as CSC) that were using methods of accounting inconsistent with the Revenue Ruling. Revenue Ruling 90–105 stated that such taxpayers

> are required to change their method of accounting. If a taxpayer makes the change in accordance with this revenue ruling, the change is to be effective for purposes of claiming deductions under section 404(a) for all elective deferral and matching contributions actually paid after December 31, 1989, except to the extent such contributions were deducted on a return filed before December 7, [1990] (the Release Date). * * *
>
> * * * In addition, the taxpayer must type or legibly print on the first return filed after the Release Date the following notation: "Change in Method of Accounting under Rev. Rul. 90–105." If a taxpayer changes its method in accordance with this revenue ruling, the Service will not apply the holding in this revenue ruling to contributions actually paid before January 1, 1990, or to contributions actually paid on or after that date for which a deduction was claimed on a return filed before the Release Date (even if the Service has raised the issue of the deductibility of such a contribution upon examination). * * *

> \*       \*       \*       \*       \*       \*

> If a taxpayer, however, fails to change its method of accounting in accordance with this revenue ruling, the Service may require the taxpayer to change its method of accounting in the earliest open taxable year on a cut-off basis, notwithstanding the provisions of Rev. Proc. 84–74, 1984–2 C.B. 736.

1990–2 C.B. at 71–72.[2]

On December 17, 1990, CSC timely filed its federal income tax return for TY 1990.

---

1. While the Service now questions CSC's interpretation of Revenue Ruling 76–28, prior to issuing Revenue Ruling 90–105, the Service consistently concluded that contributions with respect to compensation earned after the close of the taxable year could be "on account of" (and thus deductible in) the prior taxable year under the language of Revenue Ruling 76–28. See, e.g., P.L.R. 8822104 (Mar. 14, 1998) (401(k) plan). See also P.L.R. 8227068 (Apr. 9, 1982); P.L.R. 8207051 (Nov. 19, 1981); P.L.R. 8111082 (Dec. 18, 1980); P.L.R. 8042133 (July 25, 1980), supplemented by P.L.R. 8046047 (Aug. 20, 1980);

P.L.R. 7945115 (Aug. 8, 1979); T.A.M. 8543002 (Apr. 30, 1985); T.A.M. 8303002 (1983). While these rulings are not binding upon the Service, they help demonstrate that the Service was aware that taxpayers such as CSC would be and were interpreting Revenue Ruling 76–28 in a manner inconsistent with Revenue Ruling 90–105. See also Affidavit of Alvin D. Lurie.

2. The "Application" section of Revenue Ruling 90–105, as published in the Internal Revenue Bulletin and in the Cumulative Bulletin, stated, in part:

Stips. ¶ 11, Ex. C. In compliance with the provisions of Revenue Rule 90–105, CSC changed its method of accounting and did not claim a deduction for the Contributions in Dispute on its original tax return for TY 1990. *Id.* ¶ 11–12, Ex. C. The total tax liability shown on CSC's original TY 1990 return was $34,058,952. *Id.* ¶ 14, Ex. C. The tax due shown on the original return was $9,126,117. *Id.* CSC made a payment of $9,126,117 on or around December 17, 1990, to satisfy the tax liability shown on the original TY 1990 return. *Id.* ¶ 15.

Subsequently, CSC filed a timely claim for refund in the form of an amended tax return, Form 1120X (Amended U.S. Corporation Income Tax Return) ("Amended Return"), for TY 1990 with the Service on January 15, 1991. Stips. ¶ 16, Ex. D. On its Amended Return, CSC claimed a $25,462,733 deduction for the Contributions in Dispute and sought a refund of taxes paid in the amount of $8,681,867 plus statutory interest. *Id.* ¶ 17, Ex. D.

The parties agree that the Contributions in Dispute are deductible by CSC under section 404(a) of the Code. The parties disagree, however, on whether the Contributions in Dispute are deductible by CSC on the TY 1990 tax return or in a subsequent taxable year. *See* Stips. ¶ 20.

On May 7, 1992, CSC filed a Complaint with this Court seeking a refund of income taxes paid with regards to the Contributions in Dispute, plus interest. At the time the Complaint was filed, however, the Service recently had begun an audit of the plaintiff's taxable years ending March 29, 1985, through March 29, 1991. Proceedings before this Court, therefore, were suspended until the completion of the audit. *See* Order of Oct. 7, 1992 (extended by Order of Jan. 7, 1994, Order of Jan. 27, 1995, Order of Feb. 6, 1996, Order of July 2, 1998). On October 16, 1998, the plaintiff and the Service executed a Form 870–AD (Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment) covering CSC's taxable years ending March 29, 1985, through March 29, 1991. This form reflected the resolution of all issues raised by the Service for the audit of those years, including TY 1990, but did not include any resolution of CSC's claim for a deduction of the Contributions in Dispute. Accordingly, the suspension was lifted by Order of March 22, 1999, and the defendant filed its Answer on June 21, 1999.

On October 13, 2000, the plaintiff filed a Motion for Partial Summary Judgment with this Court.[3] On January 22, 2001, the defendant responded to the plaintiff's Motion for Partial Summary Judgment and cross-moved for summary judgment.[4] The plaintiff responded to the defendant's cross-motion on

---

Taxpayers using a method of accounting inconsistent with this revenue ruling are required to change their method of accounting. If a taxpayer makes the change in accordance with this revenue ruling, the change is to be effective for purposes of claiming deductions under section 404(a) for all elective deferral and matching contributions actually paid after December 31, 1989, except to the extent such contributions were deducted on a return filed before December 7, 1989 (the Release Date). 1990–2 C.B. at 71. Both parties agree that the December 7, 1989 Release Date quoted in these publications is erroneous, and that the correct Release Date is December 7, 1990. *See* Order of Sept. 27, 2000. The Service subsequently clarified Revenue Ruling 90–105 to reflect the correct Release Date. Ann. 90–144, 1990 I.R.B. 64. The above-quoted language has thus been edited in the text of this Opinion to reflect the proper Release Date.

3. The plaintiff has not moved for summary judgment with respect to the amount of the refund

that the plaintiff would be entitled to if this Court were to grant its motion. Instead, the parties have stipulated that if the Court grants judgment in favor of the plaintiff, they will attempt to determine the amount of any refund, plus any interest, owed. Stips. ¶ 22.

4. Further, on January 8, 2001, the defendant made a separate Motion to Strike the Affidavit of Alvin D. Lurie ("Motion to Strike"). The Lurie affidavit had been offered by the plaintiff in support of its Motion for Partial Summary Judgment. The *Motion to Strike is hereby denied.*

The Lurie affidavit, however, is only admitted for the limited purposes of demonstrating that there were multiple interpretations of Revenue Ruling 76–28 and section 404(a)(6) of the Code and that the Service was aware that taxpayers might be interpreting the law in a manner inconsistent with Revenue Ruling 90–105. The affidavit is not admitted to demonstrate the substantive meaning of Revenue Ruling 76–28 or section 404(a)(6) of the Code.

February 20, 2001, and the defendant replied on March 23, 2001. The plaintiff was allowed to file a sur-reply on May 30, 2001, and a final sur-reply by the defendant was filed on June 14, 2001. Oral arguments were held on June 28, 2001.

### Discussion

Pursuant to the United States Court of Federal Claims Rule ("RCFC") 56, summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). A material fact is one that might affect the outcome of the suit under the governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. This Court will not grant summary judgment when a valid dispute about a material fact exists and the dispute is such that a reasonable factfinder could return a verdict for the nonmoving party. *See id.* "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." RCFC 56(c).

When both parties have cross-moved for summary judgment, such as in the present case, each party's motion must be evaluated on its own merits, drawing all reasonable inferences against the party whose motion is being considered. *See Mingus Constructors, Inc.*, 812 F.2d at 1391. Thus, each moving party bears the initial burden of establishing the absence of any disputes of material fact.

*See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. When the moving party has met its burden of showing that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to provide facts establishing that a genuine issue for trial exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

As an initial matter, it is important to note that the plaintiff's Partial Motion for Summary Judgment does not challenge the Service's substantive interpretation of Code section 404(a)(6), as set forth in Revenue Ruling 90–105.[5] Indeed, the plaintiff effectively has conceded that the Service's interpretation of Code section 404(a)(6) is substantively correct, and this Court agrees with this conclusion. *See* Tr. at 6–7 (June 28, 2001). The plaintiff, however, is challenging the *procedure* by which the Service applied its interpretation of section 404(a)(6). The plaintiff asserts that Revenue Ruling 90–105 constituted an abuse of discretion, to the extent that it was implemented in a manner that discriminated between similarly-situated taxpayers without a rational basis for such discrimination.

Generally, section 7805(a) of the Code authorizes the Service to issue "all needful rules and regulations for the enforcement of [the Code] * * *." 26 U.S.C. § 7805(a). *See also* 26 C.F.R. § 301.7805–1(a) (2001). Indeed, even when the Service has taken a prior position on an issue of law, the Service has the discretion to change its position. *See Dickman v. Commissioner*, 465 U.S. 330, 343, 104 S.Ct. 1086, 79 L.Ed.2d 343, *reh'g denied*, 466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984) ("the Commissioner may change an earlier interpretation of the law * * * This rule applies even though a taxpayer may have relied to his detriment upon

---

5. The plaintiff's Complaint, filed in 1992, asserted in part that Revenue Ruling 90–105 was an incorrect interpretation of the law. Compl. ¶ 12. Subsequent rulings by the U.S. Court of Appeals for the Ninth Circuit and for the Tenth Circuit, however, have upheld the substantive correctness of the interpretation of Code section 404(a)(6) found in Revenue Ruling 90–105. *Lucky Stores, Inc. v. Commissioner*, 153 F.3d 964 (9th Cir. 1998), *cert. denied*, 523 U.S. 1111, 119 S.Ct.

1755, 143 L.Ed.2d 787 (1999); *American Stores Co. v. Commissioner*, 170 F.3d 1267 (10th Cir.), *cert. denied*, 528 U.S. 875, 120 S.Ct. 182, 145 L.Ed.2d 153 (1999). In light of the plaintiff's failure to pursue the argument that Revenue Ruling 90–105 was an incorrect interpretation of the law when faced with the defendant's Motion for Summary Judgment, this Court will treat the plaintiff as having abandoned that argument.

the Commissioner's prior position.") (citations omitted); *Automobile Club v. Commissioner,* 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957) ("[t]he doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law.") (footnote omitted). Further, the Service, in its discretion, may specify the extent to which a ruling is to be retroactive. 26 U.S.C. § 7805(b).[6] *See also Dickman,* 465 U.S. at 343, 104 S.Ct. 1086; 26 C.F.R. § 301.7805–1(b).

Nevertheless, the Service's decision to act retroactively must be a rational one and is subject to review for abuse of discretion. *See Automobile Club,* 353 U.S. at 184–86, 77 S.Ct. 707. *See also Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 981 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *Chock Full O' Nuts v. United States,* 453 F.2d 300, 302–03 (2d Cir.1971). One situation in which the Commissioner's actions may constitute an abuse of discretion is when similarly-situated taxpayers are treated differently without a rational basis for the disparate treatment. *See United States v. Kaiser,* 363 U.S. 299, 308, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960) (J. Frankfurter, concurring) ("The Commissioner cannot tax one and not tax another without some rational basis for the difference.").

The United States Court of Appeals for the Federal Circuit (the "Federal Circuit") has held that, as a general matter, the Service may not discriminate between similarly-situated taxpayers absent a rational basis for such discrimination. *See Oshkosh Truck Corp. v. United States,* 123 F.3d 1477 (Fed.Cir.1997). In *Oshkosh Truck,* the Service had issued temporary Treasury Regulations that exempted the sale of truck "trailers" and "semitrailers" from the presumed markup percentage used to determine the amount of federal excise tax owed on a "first retail sale." *Id.* at 1478. The Service, however, refused to exempt the sale of the taxpayer's high cargo capacity trucks from the presumed markup, and this Court upheld the Service's determination. *Id.* at 1479. On appeal, the Federal Circuit reversed the Court of Federal Claims and determined that the Service had committed an abuse of discretion when it failed to exempt the taxpayer's truck sales because "[t]hose sales are indistinguishable from the truck sales that the Secretary exempted from the markup * * *." *Id.* at 1481. In holding for the taxpayer, the Federal Circuit noted that the Service's refusal to allow the exemption was "inconsistent with the frequently expressed view that, unless there is a rational reason for different treatment, similarly-situated taxpayers should be treated similarly." *Id.* (citations omitted).

Further, in *International Business Machines Corp. v. United States,* 170 Ct.Cl. 357, 343 F.2d 914 (1965), *cert. denied,* 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), the United States Court of Claims held that the Service abused its discretion in failing to act retroactively, resulting in discrimination between similarly-situated taxpayers. In that case, Remington Rand ("Remington"), a competitor of the taxpayer International Business Machines Corp. ("IBM"), had obtained a private letter ruling exempting the sales of its computer systems from federal excise tax. *Id.* at 359–60, 343 F.2d 914, 343 F.2d at 916. When IBM sought a ruling from the Service that the sales of its identical computer systems were also exempt from the federal excise tax, the Service denied IBM's request and *prospectively* revoked Remington's prior ruling. *Id.* at 360–61, 343 F.2d at 916–17. By only prospectively revoking Remington's ruling, however, the Service effectively allowed Remington to pay no federal excise tax on the sale of its computer systems for a period from 1952 through January 1958, while IBM was required to pay the tax on sales of its identical computer systems for the same period. Thus, IBM sought a refund of the federal excise tax it had paid on sales of its computer systems for the time period during which Remington did not pay such tax.

In holding that IBM was entitled to a refund, the United States Court of Claims

---

6. The Taxpayer Bill of Rights 2, Pub.L. No. 104–168, § 1101(a), 110 Stat. 1452, 1468–69 amended section 7805(b) of the Code; the amended section, however, is applicable only to regulations that relate to statutory provisions enacted after July 30, 1996.

first noted that the issue was not whether or not the Service was correct as a matter of substantive law in denying IBM's request and revoking the Remington ruling; IBM had conceded that its computer systems were subject to the excise tax. *Id.* at 365–66. 343 F.2d at 919. Instead, the Court focused upon the requirement that the Service must treat similarly-situated taxpayers in a similar manner, absent a rational basis for discrimination. While the Service is granted discretion under section 7805(b) of the Code to specify the extent to which a ruling is to be retroactive, the Court observed that:

> [i]mplicit, too, in the Congressional award of discretion to the Service, through Section 7805(b), is the power as well as the obligation to consider the totality of the circumstances surrounding the handing down of a ruling—including the comparative or differential effect on the other taxpayers in the same class. 'The Commissioner cannot tax one and not tax another without some rational basis for the difference.' *United States v. Kaiser*, 363 U.S. 299, 308, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960) (Frankfurter, J., concurring). This factor has come to be recognized as central to the administration of the section. * * * Equality of treatment is so dominant in our understanding of justice that discretion, where it is allowed a role, must pay the strictest heed.

*Id.* at 366–67, 343 F.2d at 920 (citations omitted). IBM's computer systems were effectively identical to Remington's computer systems, yet, because of the Service's rulings, only IBM's computer systems were subject to the excise tax for the period of 1952 through January 1958. Thus, the Court concluded, IBM was entitled to a refund of the excise taxes it paid from 1952 through January 1958. *Id.* at 925.

While both *Oshkosh Truck* and *International Business Machines* stand for the general proposition that the Service must treat similarly-situated taxpayers in a similar man-

ner, absent some rational basis for discrimination, in both of those cases, the Service discriminated between taxpayers that, as a matter of observable fact, were in similar positions. In the case at bar, however, the only similarity between CSC and the other taxpayers affected by Revenue Ruling 90–105 is the probable use of a disputed accounting method for accelerating gains. Nevertheless, further case law makes clear that discrimination based solely upon an arbitrary factor, such as whether or not a taxpayer has paid the taxes at issue or the filing date of a taxpayer's return, is sufficient to conclude that the Service had abused its discretion.

More specifically, in *Connecticut Railway & Lighting Co. v. United States*, 135 Ct.Cl. 650, 142 F.Supp. 907 (1956), and *Exchange Parts Co. v. United States*, 150 Ct.Cl. 538, 279 F.2d 251 (1960), the Court of Claims held that the taxpayers were entitled to refunds because the Service had abused its discretion in retroactive rulings that unreasonably discriminated between taxpayers, based solely on whether the taxpayers had paid or not paid the taxes at issue. In both cases, the Court acknowledged the substantive correctness of the Service's ruling, but nevertheless ordered a refund because the rulings discriminated between taxpayers without any rational basis for such discrimination.

In *Connecticut Railway*, the taxpayer Connecticut Railway & Lighting Co. ("Connecticut Railway") had leased certain property to a lessee. Under the terms of the lease agreement, Connecticut Railway was entitled to be reimbursed by the lessee for any taxes paid on the rental payments (the "first tax"), as well as any taxes paid on those tax reimbursements (the "second tax").[7] 135 Ct.Cl. at 652, 142 F.Supp. at 908. Prior to 1952, the Service only collected a first tax and did not require payment of any second tax.[8] Connecticut Railway, however, had paid both the first and second tax to the Service. *Id.* In 1952, the Service issued two rulings re-

---

7. The lease agreement provided for additional reimbursements on further levels of taxation upon tax reimbursements, however these additional reimbursements were not relevant for the purposes of the Court's analysis. *Connecticut Ry.*, 135 Ct.Cl. at 652, 142 F.Supp. at 908.

8. *See Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 730–31, 49 S.Ct. 499, 73 L.Ed. 918 (1929).

quiring the payment of the second tax, but exempting all tax years beginning prior to 1952 from the second tax requirement, except to the extent that a taxpayer (such as Connecticut Railway) had already paid the second tax. *Id.* at 653–54, 142 F.Supp. at 908–09. The Court of Claims held that this retroactive exemption arbitrarily discriminated between taxpayers who had paid their taxes and those who had not and that Connecticut Railway was therefore entitled to a refund of the second tax for payments made prior to 1952. *Id.* at 654–56, 142 F.Supp. 907, 142 F.Supp. at 909–10. The Court of Claims rejected the Service's suggestion that the court should look only at the substantive law to determine whether or not the second tax constituted income under the Code and ignore any procedural concerns with the two 1952 rulings because the Service need not rely upon such rulings to find Connecticut Railway liable for the second tax. The court stated that "the Government's disclaimer of reliance upon the 1952 regulation with its express provision for discrimination, cannot erase the fact of the discrimination." *Id.* at 654, 142 F.Supp. at 909. Whether or not the Service's position was a correct interpretation of the Code had no bearing upon the question of unreasonable discrimination.

Likewise, in *Exchange Parts*, the Court of Claims refused to allow the Service to discriminate between taxpayers based solely "upon whether the particular taxpayer had, or had not paid his taxes." 150 Ct.Cl. at 543, 279 F.2d at 254. In that case, the taxpayer sought a refund of the excise taxes paid in connection with its automotive parts remanufacturing operations. In 1954, the plaintiff had received a favorable ruling from the Service,[9] stating that an excise tax was not due on certain remanufactured parts. *Id.* at 541, 279 F.2d at 253 (citing Rev. Rul. 54–329, 1954–2 C.B. 405). Because the taxpayer had already paid such excise tax; in 1955, it filed for a refund. *Id.* at 542, 279 F.2d at 253. Subsequently, the Service changed its position and, in 1956, issued a ruling holding that such remanufactured parts were subject to the excise tax. *Id.* at 542, 279 F.2d at 253–54

(citing Rev. Rul. 56–189, 1956–1 C.B. 503). The Service stated that it would not apply this ruling to any sales occurring prior to July 1956, except to the extent the tax had been paid and a taxpayer was seeking a refund. *Id.* The United States Court of Claims held that refusing to permit a refund while otherwise not applying the ruling retroactively resulted in unreasonable discrimination between similarly-situated taxpayers. *Id.* at 543, 279 F.2d at 254 (citing *Connecticut Ry.*, 135 Ct.Cl. at 653–54, 142 F.Supp. at 908–09). As in *Connecticut Railway*, the Service had impermissibly and arbitrarily discriminated between taxpayers by disallowing the refund.

This Court's conclusion is further buttressed by *Farmers' & Merchants' Bank v. United States*, 476 F.2d 406 (4th Cir.1973), which was cited approvingly by the Federal Circuit in its *Oshkosh Truck* decision. *See Oshkosh Truck*, 123 F.3d at 1481. *Farmers' & Merchants' Bank* is virtually indistinguishable from the case at bar. In *Farmers' & Merchants' Bank*, the United States Court of Appeals for the Fourth Circuit held that the Service had arbitrarily and impermissibly discriminated between similarly-situated taxpayers when its revenue ruling denied a deduction, except to the extent that the deduction had been claimed for taxable years ending shortly after the ruling was released. 476 F.2d at 409. Because the Service denied a deduction to those taxpayers who failed to claim it on their original return, the Fourth Circuit found that the Service had abused its discretion. The Court characterized the Service's ruling as one that unfairly "indulges the 'incorrect' [taxpayers] to retain their gains while declining on a procedural point to accord [the plaintiff] enjoyment of the same indulgence." *Id.* at 408. Such unfairness violated the basic maxim that "the Commissioner cannot tax one and not tax another without some rational basis for the difference." *Id.* at 409 (quoting *United States v. Kaiser*, 363 U.S. 299, 308, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960) (J. Frankfurter, concurring)).

9. A supplier of the plaintiff in *Exchange Parts* also had received a similar ruling from the Service holding that such products were not subject to the excise tax. 150 Ct.Cl. at 541–42, 279 F.2d at 253 (citing Rev. Rul. 55–98, 1955–1 C.B. 524).

In *Connecticut Railway, Exchange Parts,* and *Farmers' & Merchants' Bank,* the courts held that the Service's use of an arbitrary distinction (such as having "paid or not paid" a tax) to distinguish between otherwise similarly-situated taxpayers worked unreasonable discrimination between those similarly-situated taxpayers. However, the question remains whether the distinction between having "filed or not filed" a tax return is also an arbitrary distinction that works unreasonable discrimination between similarly-situated taxpayers. This Court, however, can find no relevant distinction between "paid or not paid" and "filed or not filed" under the facts of this case. Both are equally arbitrary distinctions, for the purposes of the present analysis. Indeed, the "filed or not filed" distinction is virtually identical to the "claimed or not claimed" distinction which was held arbitrary in *Farmers' & Merchants' Bank.* Thus, this Court holds that the Service abused its discretion in arbitrarily discriminating between similarly-situated taxpayers, by allowing certain taxpayers to deduct contributions to qualified employee benefit plans that were made during the period between the close of a given taxable year and the due date for filing the tax return for that year, and disallowing other taxpayers the same deduction, based solely on whether or not the taxpayer had filed its return by the Release Date.

In order to highlight the arbitrary nature of Revenue Ruling 90–105 consider, for example, two hypothetical taxpayers: Taxpayer A and Taxpayer B. Both Taxpayer A's and Taxpayer B's tax years ended on March 30, 1990, and they both contributed similar amounts to their qualified employee pension plans between the close of the tax years and the filing dates of their returns. Taxpayer A, however, filed its return on December 6, 1990, while Taxpayer B filed its return on December 17, 1990. Under Revenue Ruling 90–105, Taxpayer A would have been allowed to deduct contributions made to its qualified employee pension plans between the close of the tax year and the filing date of its return in 1990, while Taxpayer B would not be allowed to deduct such contributions. Indeed, even if Taxpayer B had filed on December 7, 1990, one day after Taxpayer A, Taxpayer B would be disallowed the entire deduction. Such discrimination between similarly-situated taxpayers is a clear abuse of discretion.

Of course, discrimination on the basis of a filing date might be permissible in certain situations in which the Service has a rational basis for such discrimination. In this case, however, the Service has failed to offer any rational basis for distinguishing between CSC and taxpayers who filed their returns prior to the December 7, 1990 Release Date.[10] Indeed, counsel for the Service represented before this Court that there was no rationale for the cutoff date other than perhaps basic administrative efficiency.[11] Efficiency, however desirable, cannot serve as the sole rationale for discrimination between similarly-situated taxpayers. The rationale that excuses such discrimination needs to have some logical connection to the discrimination itself. The Service's appeal to efficiency cannot explain away its disparate treatment of similarly-situated taxpayers.

Rather than attempt to supply this Court with a legitimate rational basis for its discriminatory treatment of similarly-situated

10. Further, while the defendant correctly points out that the Code is rife with irrational discriminations between taxpayers, such supposed irrationality is within Congress' legislative discretion and not within the Service's administrative discretion.

11. None of the Service's filings indicated a rational basis for the discrimination among similarly-situated taxpayers, and the only indication that efficiency might be a motive is distilled from counsel for the Service's comments at the June 28, 2001 hearing.

COURT: Okay * * * what's the rationale for the cutoff date? Why did they do that?

MR. BASSIN [attorney for the Service]: As of today, do it right.

      *     *     *     *     *     *

COURT: Okay. So the rationale, in your mind, was simply to get it done—
MR. BASSIN: Right.
COURT: —and regardless of where the chips fell?
MR. BASSIN: Well, the chips have—there— somebody is—somebody is going to be upset * * *.
COURT: But we're talking about, you know, similarly-situated people and—
MR. BASSIN: Yeah.
Tr. at 33–34 (June 28, 2001).

taxpayers, the Service insists that this case should be dismissed because CSC changed its accounting methods on its original TY 1990 return. The defendant argues that because CSC followed the provisions of Revenue Ruling 90–105 and originally filed a return that did not deduct the Contributions in Dispute, CSC is barred by Code section 446(e) from changing its method of accounting seeking a deduction for the Contributions in Dispute without the prior approval of the Service. *See* 26 U.S.C. § 446(e) ("Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary.").

The Service's argument, however, mischaracterizes the nature of the relief that CSC seeks before this Court. CSC is not attempting to change its method of accounting in future years for contributions covered by Revenue Ruling 90–105. CSC, in accordance with the mandatory language of Revenue Ruling 90–105, changed its accounting method in 1990 and has abided by this change ever since that time. What CSC does seek, however, is to be treated as other similarly-situated taxpayers, whose tax years ended prior to the Release Date, and to be allowed to deduct contributions to its qualified employee benefit plans that were made during the period between the close of TY 1990 and the due date for filing the tax return for TY 1990. In other words, CSC simply seeks to have Revenue Ruling 90–105 not applied retroactively to the Contributions in Dispute.

The Service also claims that CSC voluntarily and willingly changed its accounting methods and therefore is subject to the consequences of a voluntary change in accounting methods. However, there was very little that was voluntary about CSC's response to Revenue Ruling 90–105. Revenue Ruling 90–105 clearly stated that the taxpayers using a method of accounting inconsistent with the ruling (such as CSC) were *"required* to change their method of accounting." Rev. Rul. 90–105, 1990–2 C.B. at 71 (emphasis added). The language of the ruling makes the change mandatory, and CSC complied with the Service's requirements. To preclude CSC from recovery because it complied with the Service's discriminatory ruling would be wholly unjust. CSC had a right to contest Revenue Ruling 90–105 as applied to it when other taxpayers similarly situated had been allowed to deduct these pension contributions in TY 1990 prior to the Release Date.

The defendant further argues that because Revenue Ruling 90–105 is a valid interpretation of the law, the plaintiff cannot recover in this action for the Contributions in Dispute. However, as demonstrated in the cases above, the substantive correctness of the Service's position is irrelevant for the purposes of determining if the Service committed an abuse of discretion in discriminating between similarly-situated taxpayers. *See International Business Machines,* 170 Ct.Cl. at 365–66, 343 F.2d at 919; *Connecticut Ry.,* 135 Ct.Cl. at 654, 142 F.Supp. at 909; *Exchange Parts,* 150 Ct.Cl. at 542–43, 279 F.2d at 254.

Finally, the Service contends that in order for there to be impermissible discrimination, the Service needs to have changed its interpretation of the Code. The Service claims that Revenue Ruling 76–28 never actually interpreted the "on account of" language in a way that covered the specific facts of this case and that Revenue Ruling 90–105 thus could not represent a change in interpretation. The facts, however, do not support the Service's position. The plain language of Revenue Ruling 76–28 stated that it was crafted to "provide[ ] rules with respect to the application of section 404(a)(6) of the Code," and it clearly provides an interpretation of the "on account of" language. *See* 1976–1 C.B. 106, *modified,* Rev. Rul. 76–77, 1976–1 C.B. 107. Moreover, prior to issuing Revenue Ruling 90–105, the Service consistently concluded that contributions made during the period between the close of a given taxable year and the due date for filing the tax return could be "on account of" (and thus deductible in) the prior taxable year under the language of Revenue Ruling 76–28. *See, e.g.,* P.L.R. 8822104 (Mar. 14, 1998) (401(k) plan). *See also* P.L.R. 8227068 (Apr. 9, 1982); P.L.R. 8207051 (Nov. 19, 1981);

P.L.R. 8111082 (Dec. 18, 1980); P.L.R. 8042133 (July 25, 1980), supplemented by P.L.R. 8046047 (Aug. 20, 1980); P.L.R. 7945115 (Aug. 8, 1979); T.A.M. 8543002 (Apr. 30, 1985); T.A.M. 8303002 (1983). While the Service is not bound to its prior interpretations of Revenue Ruling 76–28, it is disingenuous to assert that Revenue Ruling 76–28 could not purport to authorize these deductions.

Moreover, even if the language of Revenue Ruling 76–28 did not authorize any taxpayer to deduct contributions to its qualified employee benefit plans that were made during the period between the close of a given taxable year and the due date for filing the tax return for that year, Revenue Ruling 90–105 did. Under Revenue Ruling 90–105, any taxpayer filing before the Release Date was explicitly allowed these deductions, whereas those filing after the Release Date were denied such deductions. On its face, Revenue Ruling 90–105 discriminated between similarly-situated taxpayers, based solely on the date that the tax return was filed.

In summary, the Service committed an abuse of discretion when it discriminated among similarly-situated taxpayers without any rational basis for such discrimination in Revenue Ruling 90–105. The plaintiff was entitled to deduct the Contributions in Dispute on its TY 1990 return.

## CONCLUSION

For the foregoing reasons, the plaintiff's Partial Motion for Summary Judgment as to liability is GRANTED, and the defendant's Motion for Summary Judgment is DENIED.

The parties are to advise the Court within 60 days as to their intentions regarding further proceedings involving the amount of recovery.

Each party is to bear its own costs.